UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BARBARA WILLIAMS,            )
    Plaintiff,           )
                         )
        v.             )  Civil No. 1:17-cv-167
                         )
NANCY A. BERRYHILL,          )
    Defendant.           )

## REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Barbara Williams ("Plaintiff") seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. On August 14, 2017, the certified Administrative Record ("R.") was filed under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1). By October 23, 2017, both parties filed motions for summary judgment with briefs in support, which are now ripe for resolution.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends, for the following reasons, that Plaintiff's Motion for Summary Judgment (Dkt. 18) be DENIED and Defendant's

---

1. The motions and briefs in this case include Plaintiff's Motion for Summary Judgment (Dkt. 18) ("Pl.'s Mot. Summ. J."), the Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. 19) ("Pl.'s Mem. Supp."), Defendant's Motion for Summary Judgment (Dkt. 20) ("Def.'s Mot. Summ. J."), the Memorandum of Law in Support of Defendant's Cross Motion for Summary Judgment, and in Opposition to Plaintiff's Motion for Summary Judgment (Dkts. 21 & 22) ("Def.'s Mem. Supp. & Opp'n"), and Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. 24) ("Pl.'s Mem. Opp.").

Motion for Summary Judgment (Dkt. 20) be GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the presently disputed application for DIB on September 10, 2013, alleging disabling conditions of hypertension, chronic sinusitis, a severe pinched nerve in the neck, severe lower back pain, a nodule on the thyroid, arthritis in the neck, the inability to raise the right arm, the inability to walk or stand for long periods, pain on left side of the body, and severe weakness, with an alleged onset date ("AOD") of June 7, 2007. (R. at 87-88, 173-74.) Plaintiff's claims were first denied on March 11, 2014, then again on reconsideration on May 1, 2014. (Id. at 104-09, 111-17.) On May 12, 2014, Plaintiff filed a request for a hearing in front of an administrative law judge ("ALJ"). (Id. at 135-36.) The hearing was held in front of ALJ Michael A. Krasnow on May 26, 2016, during which the testimonies of Plaintiff and vocational expert James M. Ryan were taken. (Id. at 44-80.) The ALJ issued his decision denying Plaintiff's claims on June 29, 2016. (Id. at 30-40.) On August 23, 2016, Plaintiff requested review of the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council"). (Id. at 26-28.) The Appeals Council denied Plaintiff's request for review on December 7, 2016, making the ALJ's decision the final decision of Defendant. (Id. at 6-8.) Plaintiff filed her Complaint (Dkt.

1) for judicial review of Defendant's decision on February 8, 2017. After the Court granted an enlargement of time to answer, Defendant filed her timely Answer (Dkt. 8) on August 8, 2017. By October 23, 2017, Plaintiff filed her Motion for Summary Judgment (Dkt. 18) and Defendant filed her Motion for Summary Judgment (Dkt. 20). The matter is now ripe for review.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision applied the correct legal standard was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. Hays, 907 F.2d at 1456. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-

3

weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d at 589 (4th Cir. 1996)). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. See Coffman, 829 F.2d at 517-18. Moreover, relevant law charges Defendant with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of a claimant, not the reviewing district court. See Hays, 907 F.2d at 1456-57. With this standard in mind, the Court evaluates the ALJ's findings and decision.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity

from June 7, 2007, Plaintiff's AOD, to December 31, 2012, the date Plaintiff last met the insured status requirements of the Social Security Act, also known as the date of last insured ("DLI"). (R. at 35.) At step two of the sequential evaluation, the ALJ found that Plaintiff had the following medically determinable impairments through her DLI: essential hypertension, sinusitis, obesity, seborrheic keratosis, and metrorrhagia. (Id.) However, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months. (Id.) Therefore, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act from her AOD to her DLI. (Id. at 40.)

## IV. RELEVANT FACTUAL BACKGROUND

Plaintiff was 54 years old when she testified before the ALJ. (Id. at 50.) Plaintiff ended school in the ninth grade, but later earned a GED and completed cosmetology school. (Id. at 53, 88.) Plaintiff's work history included jobs in fast food restaurants, a grocery store, and a carpet plant. (Id. at 89, 202-09.) Plaintiff generally claimed that injuries from car accidents and the aftermath of a sinus surgery have left her unable to work. (Id. at 48-49.) Plaintiff claimed the resultant pain from the accidents and surgery has worn down her body and has made it impossible for her body to function. (Id. at 47-48,

57, 73.)

## A. Medical Evidence

The record contains eight years of Plaintiff's medical records, which cover distinct time frames. The first time frame is before June 7, 2007: the time before Plaintiff's AOD. The second time frame is from June 7, 2007, to December 31, 2012: the time between Plaintiff's AOD and Plaintiff's DLI. The third time frame is after December 31, 2012: the time after Plaintiff's DLI. The medical records from each time frame are described below.

### 1. Before Plaintiff's AOD

In September 1999, Plaintiff exhibited pain in her back and muscle spasms in her back and on her sides. (Id. at 1109, 1117, 1121.) In January 2000, Plaintiff had a knot in her back and was having muscle spasms. (Id. at 1110, 1122.) In October 2000, Plaintiff exhibited pain in her lower back and abdomen. (Id. at 1111, 1124.) In March 2002, Plaintiff exhibited pain in her lower back. (Id. at 1113, 1123.) In January 2006, an x-ray of Plaintiff's chest revealed no evidence of disease. (Id. at 1136.) Later in January 2006, Plaintiff reported a headache and pain in her leg. (Id. at 1141-44.)

By September 2006, Plaintiff reported being pain free. (Id. at 658, 1102.) In November 2006, Plaintiff reported mild pain from coughing at night. (Id. at 656, 1100.) In December 2006,

Plaintiff reported severe headache pain. (Id. at 653-55, 1097-99.) In March 2007, Plaintiff was noted as pain free. (Id. at 651, 1095.) Later in March 2007, Plaintiff reported a sore throat and neck pain. (Id. at 347, 351.) Due to her neck pain, Plaintiff had imaging completed of her neck, which revealed normal tissues. (Id. at 1139-40.) In April 2007, Plaintiff was twice noted as pain free. (Id. at 645, 648, 1089, 1092.)

### 2. After Plaintiff's AOD and Before Plaintiff's DLI

In late June 2007, Plaintiff was noted as pain free. (Id. at 643, 1087.) In November 2007, Plaintiff was noted as pain free. (Id. at 638, 1082.) In December 2007, Plaintiff was noted as pain free. (Id. at 634, 1078.) In November 2008, Plaintiff was noted as pain free. (Id. at 629, 1073.) In August 2009, Plaintiff reported ear pain, a sore throat, and a respiratory infection. (Id. at 338.) In October 2009, Plaintiff twice reported ear pain, a sore threat, and a respiratory infection. (Id. at 334-35, 342-43.) In April 2009, Plaintiff was twice noted as pain free. (Id. at 621-25, 1065-69.) In June 2009, Plaintiff was noted as having ear blockage but was pain free. (Id. at 618, 1062.) In August 2009, Plaintiff was noted as pain free. (Id. at 615, 1059.) In November 2009, Plaintiff reported a sinus infection, but was noted as pain free. (Id. at 610, 1054.)

In February 2010, Plaintiff reported sinus problems but was noted as pain free with no abnormalities in the neck or

elsewhere. (Id. at 608, 1052.) In March 2010, Plaintiff was noted as pain free. (Id. at 605, 1049.) In April 2010, Plaintiff was noted as pain free. (Id. at 601, 1045.) In May 2010, Plaintiff was twice noted as pain free. (Id. at 589, 595, 719, 1033, 1039.) In July 2010, Plaintiff complained of earaches and sinus problems, and Plaintiff had severe pain that was limited to her earaches. (Id. at 583, 1027.) Later in July 2010, Plaintiff was noted as pain free. (Id. at 580, 1024.) In August 2010, Plaintiff reported recurrent sinus problems, a physical review of Plaintiff revealed no abnormalities and that neck movement did not cause Plaintiff neck pain, and Plaintiff was noted as pain free. (Id. at 574-75, 709, 711, 1018-19.) Also in August, an imaging report revealed that Plaintiff had acute sinusitis. (Id. at 400, 786.) In October 2010, Plaintiff reported recurrent sinus problems along with a sore throat that caused her moderate pain, and a physical review of Plaintiff revealed no abnormalities and revealed that neck movement did not cause Plaintiff neck pain. (Id. at 568-69, 1012-13.) In November 2010, Plaintiff underwent an operative procedure to address her sinus problems, and the procedure resulted in no noted complications. (Id. at 707-08.) Later in November 2010, Plaintiff reported recurrent sinus problems and was noted as pain free. (Id. at 563, 1007.) In December 2010, Plaintiff was noted as pain free. (Id. at 560, 1004.)

In January 2011, Plaintiff reported recurrent sinus problems and was noted as pain free. (Id. at 556, 1000.) In April 2011, Plaintiff was noted as pain free. (Id. at 553, 704-05, 997.) In June 2011, Plaintiff was noted as pain free. (Id. at 550, 994.) In October 2011, Plaintiff was noted as pain free. (Id. at 546, 990.)

In February 2012, Plaintiff reported cellulitis in her foot and was noted pain free. (Id. at 542-43, 986-87.) In June 2012, Plaintiff reported headaches and sinus problems, but was also noted as pain free. (Id. at 539, 983.) In October 2012, Plaintiff reported ear and nasal congestion but was noted as pain free, and a physical review of Plaintiff did not reveal any abnormalities. (Id. at 533, 535, 977, 979, 1115, 1150.) In November 2012, Plaintiff was noted as not having any severe pain. (Id. at 530, 974.) Later in November 2012, Plaintiff reported sinus problems and headaches with moderate pain limited to her headache. (Id. at 525-26, 969-70, 1116, 1137.) Even later in November 2012, Plaintiff reported sinus problems and nasal passage blockage, with moderate pain in her throat and right ear. (Id. at 521, 693-94, 965.) Plaintiff did not report having any neck pain, and a review of Plaintiff did not reveal any abnormalities aside from sinus problems. (Id. at 521-23, 693-96, 965-67.)

### 3. *After Plaintiff's DLI*

In January 2013, Plaintiff reported a postnasal drip alongside other sinus problems, and a physical review of Plaintiff did not reveal any abnormalities aside from sinus problems. (Id. at 516-17, 960-61.) In February 2013, Plaintiff reported sinus problems. (Id. at 684.) In March 2013, Plaintiff reported ongoing sinus issues, but Plaintiff did not report any problems with pain. (Id. at 102, 510, 515, 954, 957.) An imaging of Plaintiff's sinuses identified no acute or chronic sinus disease. (Id. at 397, 783.)

Later in March 2013, Plaintiff reported soreness in her back and arms, as well as a sinus infection. (Id. at 504, 948, 1114, 1128.) Plaintiff's pain severity was noted as five out of ten and her body aches became worse with movement. (Id. at 29, 504, 948, 1114, 1128.) In April 2013, Plaintiff reported sinus problems but was noted as pain free. (Id. at 499, 676-77, 943.) Later in April, CT scan of Plaintiff did not reveal any acute or chronic sinus disease. (Id. at 501-502.)

From May 2013 through November 2013, Plaintiff often reported pain throughout her body or complain of a pinched nerve in her neck. (Id. at 101, 274-80, 284, 286, 293, 301-02, 369, 433, 440, 448, 459, 468, 474, 477, 487, 492, 675, 879, 886, 894, 903, 912, 918, 921, 931, 936.) On some occasions, Plaintiff would exhibit spasms in her neck, tingling in her extremities,

or exhibit difficulty moving without pain. (Id. at 365, 440-41, 468, 478, 487, 493, 668, 886-87, 912, 922, 931, 937.) Plaintiff also continued to report and exhibit sinus problems during this time frame and had her thyroid evaluated. (Id. at 315, 325, 393, 443-46, 450-51, 455-56, 779, 889-92, 896-97, 901-02.)

From May 2013 to August 2013, Plaintiff had imaging taken of various parts of her body. In May 2013, spinal imaging revealed multilevel degenerative disk disease. (Id. at 396, 782.) In August 2013, spinal imaging revealed degenerative changes in the spine. (Id. at 395, 451-52, 781, 897-98.) More spinal imaging in August 2013 revealed multilevel cervical spondyloarthropathy. (Id. at 394, 780.) Later in August 2013, imaging of Plaintiff's arms revealed some degenerative and some chronic changes, but no other abnormalities. (Id. at 391-92, 450, 777-78, 896.) In September 2013, more imaging of Plaintiff's arms revealed some degenerative changes but no other abnormalities. (Id. at 390, 776.) In November 2013, an x-ray taken of Plaintiff's chest revealed no acute cardiopulmonary processes. (Id. at 389, 775.)

On November 13, 2013, Plaintiff was examined by Dr. Walter J. Faillace at the Neurosurgery Clinic at the Walter Reed National Military Medical Center. (Id. at 439-42, 883-888.) In a treatment note of Plaintiff's medical history, Dr. Faillace noted: "Cervical spine MRI 2011 shows spondylosis at C5-6.

11

Repeat MRI 2013 shows progression of spondylosis to stenosis at C5-8, 6-7 and lessser [sic] stenosis at C4-5." (Id. at 440, 886.) Dr. Faillace's note of Plaintiff's medical history provides the only mention of Plaintiff undergoing an MRI in 2011.

On November 19, 2013, Plaintiff had a surgical spine surgery to address her reported pain. (Id. at 84-85.) Throughout November 2013, Plaintiff attended post-operational physical and occupational therapy sessions. (Id. at 420-32, 866-78.) Also in November 2013, Plaintiff had post-operation x-rays taken of her spine and chest, which noted Plaintiff's spine and chest were unremarkable and normal, and also noted minimal atelectasis and some postsurgical changes. (Id. at 387, 773.) At a post-operation check-up, Plaintiff reported varying levels of pain, with previous pain having been resolved in some areas but still existing in her back. (Id. at 418, 864.)

Later in January 2014, Plaintiff reported pain in her leg from falling down the stairs. (Id. at 408, 854.) From February 2014 to December 2014, Plaintiff continued to report that she experienced pain. (Id. at 81-82, 792-801, 803, 807-14, 817, 822, 827, 833, 836, 839, 842, 845, 849-50.) During that time, in June 2014, imaging of Plaintiff's cervical spine revealed moderate to severe degenerative disk disease in some parts and mild degenerative face disease in some parts. (Id. at 1113.)

Plaintiff also reported sinus problems during that time. (Id. at 408, 854.)

## B. Testimony at Administrative Hearing

At the May 26, 2016, hearing before ALJ Michael A. Krasnow, Plaintiff testified about her life, including about her alleged disabilities, from the time frame of June 7, 2007, her AOD, to December 31, 2012, her DLI. (Id. 50-75.)

Plaintiff testified about her activities of daily living during the time frame between her AOD and her DLI. Plaintiff testified that she could only stand or sit for thirty minutes before needing to do something else. (Id. at 64.) When climbing the stairs to her third-floor apartment, Plaintiff testified that she experienced severe pain and shortness of breath. (Id. at 51-52.) Plaintiff testified that when she would go grocery shopping with her husband, she could only walk in the aisles for about twenty minutes without her back and legs giving out. (Id. at 63.) Plaintiff testified that she could only lift ten pounds, and she could not lift a gallon of milk. (Id. at 64.) Plaintiff testified that she could shower and dress herself, but that she required assistance to tie her shoes. (Id. at 65-66.) Plaintiff testified that she could not cook a full meal, do the laundry, or complete housecleaning activities such as mopping, sweeping, and vacuuming. (Id. at 66-67.) Plaintiff testified that she had a driver's license and drove a car on her own once a week. (Id.

at 52-53.) Plaintiff testified that she smoked about half of a
pack of cigarettes a day, but that she did not drink alcohol or
use drugs recreationally. (Id. at 64-65.) Plaintiff testified
that she had difficulty sleeping at night because she could not
get comfortable in bed. (Id. at 71.)

Plaintiff also testified about her employment during the
time period between her AOD and her DLI. Plaintiff testified
that her most recent job was as a part-time deli clerk at a
Harris Teeter grocery store, with duties that involved
communicating with customers and slicing meats and cheeses using
a slicing machine. (Id. at 55, 58, 60.) Plaintiff testified that
while working as a deli clerk, she had severe pain in her neck,
back, legs, arms, and hands. (Id. at 57.) Plaintiff testified
that her primary care doctor treated the pain with muscle
relaxants and ibuprofen and recommended that she take time off
from using the deli's slicing machine. (Id. at 58.) Plaintiff
testified that the medications would ease, but not stop, her
pain as well as cause mental fogginess that hindered her
concentration. (Id. at 60-62.) Plaintiff testified that, along
with providing the medication, her doctor also recommended that
she try to find another job. (Id. at 59.) Plaintiff testified
that she eventually stopped working for Harris Teeter as a deli
clerk because her body was in too much pain. (Id. at 57.)
Plaintiff testified that she attempted to find other work, but

14

could not. (Id. at 60.) Plaintiff testified that her former employer, a McDonald's fast food restaurant, would not hire her because she could not stand for an hour without experiencing severe pain. (Id.)

Plaintiff also testified about accidents she had in the late 1990s. Plaintiff testified that her neck was injured in car accidents in the late 1990s, and that her back was injured in a work accident in the late 1990s. (Id. at 49, 59, 72.) Plaintiff testified that she suffered pain as a result of the accidents, and that the pain gradually increased over time. (Id. at 74.) Plaintiff testified that the pain affected her job at the Harris Teeter grocery store, as well as affecting a previous job working as a machine operator at a carpet plant, causing her to go home and miss hours during her shifts. (Id.) Plaintiff testified that this pain continued to increase and eventually caused Plaintiff's June 7, 2007, onset of her alleged disabling condition. (Id.)

## C. Submissions to Appeals Council

After the ALJ issued his decision, Plaintiff and her family members submitted letters to the Appeals Council. Plaintiff's letter stated that she believed the ALJ improperly considered her medical history, and she described physical limitations that she had prior to her DLI. (Id. at 262-64.) Plaintiff's daughter submitted a letter stating that Plaintiff exhibited symptoms of

severe pain from August 2007 to present. (Id. at 267-68.)
Plaintiff's husband submitted a letter stating that Plaintiff's
pain grew most severe at the end of 2012. (Id. at 269-70.)

## V. ANALYSIS

Plaintiff raises two issues on appeal. First, Plaintiff
argues that the ALJ erroneously determined that Plaintiff did
not have a severe impairment. (Pl.'s Mem. Supp. at 3.) Second,
Plaintiff argues that the ALJ erroneously evaluated Plaintiff's
subjective symptoms. (Id. at 6.)[2] Each issue is considered by the
Court in turn.

### A. The ALJ's Determination of No Severe Impairment

At step two of the sequential evaluation, the ALJ found
that that Plaintiff did not have a severe impairment or
combination of impairments that significantly limited her
ability to perform basic work-related activities for twelve
consecutive months. (R. at 35.) Plaintiff argues that the ALJ

---

2. Plaintiff actually focused her argument on disputing the ALJ's
"credibility" evaluation. (Pl.'s Mem. Supp. at 6-7.) However, on March 16,
2016, the Social Security Administration ("SSA") issued Social Security Rule
("SSR") 16-3p. SSR 16-3p served to eliminate the use of the term
"credibility" from the SSA's sub-regulatory policy, as the Social Security
regulations do not use the term "credibility." SSR 16-p, 2016 WL 1119029, at
*1. The elimination of the term "credibility" aimed to clarify that
subjective symptom evaluation does not examine a claimant's character. Id.
Before the adoption of SSR 16-3p, the second step of the subjective symptom
evaluation was referred to as a credibility determination, in accordance with
the SSA's then-controlling sub-regulatory policy. See SSR 96-7p, 1996 WL
374186, at *1 (July 2, 1996), superseded by SSR 16-3p, 2016 WL 1119029. In
accordance with SSR 16-3p, the ALJ did not use the term "credibility" when
evaluating Plaintiff's subjective symptoms in his decision, which was dated
after the issuing of SSR 16-3p. Therefore, the Court will construe
Plaintiff's argument to oppose the ALJ's evaluation of Plaintiff's subjective
symptoms.

erred in not considering or addressing the progression of Plaintiff's spondylosis condition beyond her DLI in determining a severe impairment. (Pl.'s Mem. Supp. at 4-6.) In opposition, Defendant argues that, despite Plaintiff claiming she was diagnosed with spondylosis before her DLI, Plaintiff failed to establish functional limitations that amounted to a severe impairment. (Def.'s Mem. Supp. & Opp'n at 16-17.)

At the second step of a sequential evaluation, an ALJ determines whether a claimant has a "severe impairment," which is defined as "any impairment or combination of impairments which significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). However, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. § 404.1522(a). Basic work activities include: physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine setting. Id. § 404.1522(b). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least

12 months." Id. § 404.1509. A claimant bears the burden of demonstrating that an impairment or combination of impairments qualifies as severe. See Bowen v. Yuckert, 482 U.S. 137, 146, 148 (1987).

To qualify for DIB, a claimant must prove that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005). In determining a claimant's disability before the DLI, "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Instead, "post-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." Id. at 341. Consideration of post-DLI evidence "is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." Id. (quoting Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)). The linkage between a post-DLI medical evaluation and a pre-DLI condition "may be enhanced further by lay observations of a claimant's condition during the relevant time period." Id.

18

At question is whether the ALJ should have considered Dr. Faillace's treatment note from a November 13, 2013, evaluation as evidence of Plaintiff's progressively worsening condition for determining Plaintiff's severe impairment. The treatment note involved Plaintiff's medical history with regards to a 2011 cervical spine MRI result, and the treatment note stated the following: "Cervical spine MRI 2011 shows spondylosis at C5-6. Repeat MRI 2013 shows progression of spondylosis to stenosis at C5-6, 6-7 and lessser [sic] stenosis at C4-5." (R. 440, 886.)[3] In evaluating Plaintiff's medical history before her DLI, the ALJ did not address any results from a 2011 cervical spine MRI, nor did the ALJ address any diagnosis of spondylosis. (Id. at 37-39.) The treatment note of a 2011 MRI test should have been considered if "permits an inference of linkage" between the spondylosis diagnosis with Plaintiff's alleged pre-DLI severe impairments. See Bird, 669 F.3d at 341.

The Court determines that the ALJ should have considered the November 13, 2013, treatment note as admissible evidence

---

3. It is possible that the note of a cervical spine MRI from 2011 is a typographical error or a misreport. No medical records from 2011 detail a doctor conducting a cervical spine MRI or referring Plaintiff to an imaging center for a cervical spine MRI. (R. at 399, 546, 549-54, 556-58, 701-05, 785, 990, 993-98, 1000-02.) Furthermore, Plaintiff's three documented spinal imaging tests each took place in 2013, with the earliest spinal imaging test stating that no previous test results were available for comparison. (Id. at 393-96, 451-52, 779-82, 897-98.) However, for the sake of Plaintiff's argument, the Court will not disregard the treatment note of a 2011 cervical spine MRI as an error, even though other courts have done so with clear errors in the medical record. See, e.g., Wells v. Colvin, 87 F. Supp. 3d 421, 433 (W.D.N.Y. 2015) (disregarding a statement on restrictions in doctor's opinion as a typographical error after comparing it to the doctor's entire opinion).

when determining the severity of Plaintiff's allegedly disabling impairments. Because Plaintiff's alleged pre-DLI severe impairment centers around severe, disabling pain throughout her body that progressed throughout the years, evidence of a spinal condition like spondylosis in 2011 offers at least the possibility of linkage between the earlier medical evidence of spondylosis and a progressive and severe spinal impairment that could have existed before Plaintiff's DLI. Furthermore, the need to consider the 2011 spondylosis diagnosis is enhanced by the fact that lay observations, taken objectively, support progressively worsening pain in Plaintiff. Specifically, Plaintiff's testimony at the administrative hearing repeatedly mentioned instances of severe pain from some type of spinal condition beginning before Plaintiff's DLI. (R. at 52, 57-74.) Statements submitted by Plaintiff and Plaintiff's family members do the same, as the statements detail Plaintiff's alleged pain symptoms before her DLI. (Id. at 262-65, 267-70.)

However, while the ALJ should have considered the November 13, 2013, treatment note and addressed it in some way, the ALJ's failure to do so was a harmless error. An error by an ALJ "is reviewed under the harmless error doctrine." Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the

agency's original opinion failed to marshal that support" and a remand would be "a waste of time." Id. at 67 (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)). Despite not considering the November 13, 2013, treatment note, the ALJ's final decision is overwhelming supported by the record and the consideration of the treatment note's spondylosis diagnosis could not have altered the ALJ's decision, meaning that remanding would be a waste of time.

Aside from the ALJ not addressing the November 13, 2013, treatment note that mentioned 2011 cervical MRI results, the ALJ's decision consistently described each other recorded instance of medical care in Plaintiff's medical history during her insured period. (R. at 37-39.) The ALJ's description and consideration of Plaintiff's medical history matched the evidence in the record. The record illustrates that, between Plaintiff's AOD and Plaintiff's DLI, Plaintiff did not have disabling conditions that constituted a severe impairment. The record shows that Plaintiff consistently reported that she was pain free with no related limitations on no less than twenty-six occasions between her AOD and her DLI. (Id. at 530-31, 533-35, 539-40, 543, 546-47, 550-51, 553, 556-57, 560-61, 563-64, 574-77, 580, 589-90, 595-96, 601-02, 605, 608-12, 615-16, 618, 622-25, 629-31, 634-35, 638-40, 643-44, 704-05, 710-14, 719-21, 974, 977-79, 983-84, 987, 990-91, 994-95, 997, 1000-02, 1004-05,

1007-09, 1018-21, 1024, 1033-34, 1039-40, 1045-46, 1049, 1052-56, 1059-60, 1062-63, 1066-69, 1073-75, 1078-79, 1082, 1087-88, 1115, 1150.) When Plaintiff did report pain during that time period, the pain was related to Plaintiff's recurrent sinus problems and sore throats. (Id. at 334-35, 338-39, 342-43, 521-22, 525-27, 568-71, 583-84, 693-96, 965-66, 969-71, 1012-16, 1027-28, 1137.) Plaintiff did not first report severe pain that resulted in limitations until March 2013, more than two months after the DLI. (Id. at 29, 504, 948, 1114, 1128.) Therefore, the ALJ's decision that Plaintiff did not have a severe impairment is overwhelmingly supported by the medical evidence of record, even though the ALJ did not consider the 2011 cervical spine MRI results.

Furthermore, the consideration of the November 13, 2013, treatment note could not have altered the ALJ's decision, because the treatment note of a 2011 MRI result is merely stating a diagnosis of spondylosis. Under the Social Security Act and applicable regulations, the 2011 spondylosis diagnosis cannot result in the finding of a disability. Because an impairment or combination of impairments is only considered severe when it significantly limits the ability to do basic work activities, it has been long-established that a diagnosis alone is not enough to establish the severe impairment needed for a finding of disability. See Gotshaw v. Ribicoff, 307 F.2d 840,

844 (4th Cir. 1962), cert. denied, Heath v. Celebrezze, 372 U.S. 945 (1963) ("The mere presence of a disease or medically determinable impairment does not automatically entitle a claimant to a disability period or disability insurance benefits under the Social Security Act."). Therefore, to show a severe impairment that amounts to disability, a claimant is required to prove not only a diagnosis, but also functional limitations resulting from the diagnosis that significantly limit work activities. See Lynch v. Berryhill, No. 3:16cv596 (HEH), 2017 WL 3167414, at *9 (E.D. Va. July 5, 2017) (affirming an ALJ's decision that the claimant's depression was not a severe impairment because the claimant did not prove the depression significantly limited her ability to do basic work activities); Bennett v. Colvin, No. 2:13cv189, 2014 WL 1603737, at *11 (E.D. Va. Apr. 21, 2014) (affirming an ALJ's decision that the claimant's diabetes was not a severe impairment because the claimant did not prove the diabetes significantly limited his ability to do basic work activities); Campbell v. Colvin, No. 2:11cv563, 2013 WL 1213062, at *9 (E.D. Va. Mar. 1, 2013) (amended report and recommendation), adopted by 2013 WL 1213090 (E.D. Va. Mar. 25, 2013) (affirming an ALJ's decision that the claimant's testicular cancer with metastasis was not a severe impairment because the claimant did not prove the cancer significantly limited his ability to do basic work activities).

Plaintiff's diagnosis of spondylosis in 2011 as provided for in the record is not sufficient to demonstrate a severe impairment. Plaintiff's submitted record of spondylosis is limited to a single treatment note from an evaluation by Dr. Faillace dated November 13, 2013. (R. at 440, 886.) Dr. Faillace's others notes for the November 13, 2013, evaluation provided no information on any functional limitations that affected Plaintiff at the time of the 2011 spondylosis diagnosis. (Id. at 439-442, 885-888.) The record does not contain any other information regarding a spondylosis diagnosis or resultant functional limitations in any medical records dated from anytime in 2011 to the DLI. (Id. at 520-54, 556-58, 691-98, 701-05, 964-98, 1000-02, 1115-16, 1118, 1125, 1137-38, 1150.) Therefore, even if the ALJ had considered the 2011 MRI result that diagnosed Plaintiff with spondylosis, that evidence cannot justify a finding of a severe impairment.

Furthermore, to be clear, in other cases where the Fourth Circuit found an ALJ's failure to consider post-DLI medical evidence to be reversible error, the evidence spoke to pre-DLI functional limitations of the claimant. See Bird, 699 F.3d at 341-42 (remanding because ALJ decision did not consider post-DLI doctor's report that related to claimant's pre-DLI posttraumatic stress disorder impairments); Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987) (remanding because ALJ decision did not

24

consider doctor's post-DLI opinion on claimant's pre-DLI breathing impairment); Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) (remanding because ALJ decision did not consider post-DLI intelligence quotient test that related to claimant's pre-DLI mental impairments); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985) (remanding because ALJ decision did not consider claimant's post-DLI prescription of home oxygen that related to claimant's pre-DLI home oxygen dependence); Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969) (remanding because ALJ decision did not consider post-DLI medical and psychoneurotic evaluations that related to pre-DLI mental impairments). Therefore, no Fourth Circuit precedent exists that otherwise instructs this Court to remand the ALJ's decision because of a failure to consider a pre-DLI diagnosis mentioned in a post-DLI treatment note that was accompanied by no notes of related pre-DLI limitations.

Lastly with regards to Plaintiff's arguments regarding the ALJ's finding of no severe impairment, the Court makes clear that the aforementioned harmless error analysis is not a post-hoc rationalization of the ALJ's decision. Plaintiff relies on Supreme Court case law from Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962), that quoted verbatim SEC v. Chenery Corp., 332 U.S. 194 (1995), to argue that the ALJ's failure to mention the 2011 cervical spine MRI results cannot

result in an affirmation of the ALJ's decision, as any affirmation would be a post-hoc rationalization. (Pl.'s Mem. Opp. at 2-3.) This is incorrect, as the Fourth Circuit has explicitly rejected that very Chenery-based argument before. See Bishop, 583 F. App'x at 67 ("[The claimant] relies on SEC v. Chenery Corp. for the proposition that a reviewing court may not affirm an agency decision based on reasoning that the agency itself never considered in its administrative proceedings. However, even assuming Chenery is applicable, any error is reviewed under the harmless error doctrine." (citation omitted)).

In summary, the Court's harmless error analysis reveals three important conclusions. First, it is clear that post-DLI medical evidence detailing pre-DLI medical information should be considered by an ALJ, making the ALJ's failure to address Dr. Faillace's November 13, 2013, treatment note an error. Second, however, remanding this case to require the ALJ to consider the November 13, 2013, treatment note could not legally alter the ALJ's final decision, as a mere diagnosis not sufficient to find a severe impairment. Therefore, third and finally, a remand to consider November 13, 2013, treatment note would be, to follow the words of the Fourth Circuit, "a waste of time," as the ALJ's decision was otherwise "overwhelmingly supported by the record." Bishop, 583 F. App'x at 67.

## B. ALJ's Evaluation of Plaintiff's Subjective Symptoms

When evaluating the medical evidence, the ALJ found that that Plaintiff's subjective symptoms were not supported by the objective medical evidence and other evidence and gave the subjective symptoms less weight in determining whether Plaintiff was disabled. (R. at 39-40.) Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective symptoms, making the ALJ's final decision erroneous as a matter of law. (Pl.'s Mem. Supp. at 6-7.) Plaintiff also briefly states that the ALJ's subjective symptom evaluation is not supported by the record as a whole. (Id. at 7.) Defendant counters that the ALJ did properly evaluate determination of Plaintiff's subjective symptoms, and so the ALJ's subjective symptom evaluation should be affirmed. (Def.'s Mem. Supp. & Opp'n at 19.)

In evaluating a claimant's subjective symptoms, an ALJ must follow a two-step analysis. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2016 WL 1119029, at *2. The first step requires an ALJ to determine the existence of an underlying medically determinable impairment that could reasonably produce the claimant's complaints, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 WL 1119029, at *2-3. When the underlying impairment reasonably could produce the claimant's complaints, the ALJ moves to the second part of the analysis, which involves the evaluation of subjective symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL
1119029, at *2, 4. In this case, the ALJ determined that
Plaintiff's medically determinable impairments could have
reasonably caused her complaints. (R. at 39.) Therefore, the
second part of the two-step complaint evaluation is implicated:
the evaluation of subjective symptoms.

An ALJ must evaluate the intensity and persistence of a
claimant's subjective symptoms, such as pain, and determine the
extent to which the symptoms limit the claimant's capacity for
work. 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 16-3p, 2016 WL
1119029, at *4. The ALJ must consider all of the available
evidence of symptoms from both objective medical evidence and
other evidence, such as treatment history. 20 C.F.R. §§
404.1529(c)(1)-(3), 416.929(c)(1)-(3), SSR 16-3p, 2016 WL
1119029, at *8. The ALJ then determines the extent to which the
subjective symptoms are consistent or inconsistent with the
available evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4);
SSR 16-3p, 2016 WL 1119029, at *8. In explaining a subjective
symptom evaluation, an ALJ must articulate which of a claimant's
subjective symptoms are supported by the evidence, and an ALJ
cannot make a blanket statement addressing all subjective
symptoms. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir.
2013); SSR 16-3p, 2016 WL 1119029, at *9. This includes stating
which subjective symptoms are consistent or inconsistent with

28

the available evidence. SSR 16-3p, 2016 WL 1119029, at *8. When

subjective symptoms are consistent with the available evidence,

an ALJ must determine that the subjective symptoms are more

likely to cause the claimant limitations. Id. at *7. On the

other hand, when subjective symptoms are inconsistent with the

available evidence, the ALJ must determine that the subjective

symptoms are less likely to cause the claimant limitations. Id.

In this case, the ALJ adhered to the requirements of the

Social Security regulations in evaluating Plaintiff's subjective

symptoms. The ALJ properly considered the available evidence, as

demonstrated by the ALJ's review of Plaintiff's subjective

complaints and Plaintiff's relevant medical history during

Plaintiff's insured period. (R. at 36-39.)[4] To be clear,

Plaintiff's subjective symptoms, as described through testimony

at the administrative hearing, involved complaints of severe

pain in her neck, back, legs, arms, and hands that made it

difficult to stand and user her arms. (Id. at 48, 57.)

The ALJ addressed Plaintiff's subjective pain symptoms,

stating that they were inconsistent with the objective medical

evidence. The ALJ noted that the record contained no evidence of

---

4. While the Court previously determined that the ALJ committed harmless
error by not addressing the 2011 MRI result found in Dr. Faillace's November
13, 2013, treatment note, the ALJ would not have been required to consider a
mere diagnosis at the second step of the subjective symptom evaluation. This
is because the ALJ's evaluation of objective medical evidence is limited to
evidence of symptoms and symptom-related functional limitations. 20 C.F.R. §§
404.1529(c), 416.929(c). As previously stated, the November 13, 2013,
treatment note by Dr. Faillace only noted that a 2011 cervical spine MRI
revealed a diagnosis of spondylosis.

multi-joint inflammation, significant loss of range of motion, reduced grip strength in the hands, loss of color in affected regions, muscle spasms, or muscle atrophy during Plaintiff's insured period. (Id. at 39.) The ALJ further noted that the record did not contain evidence that Plaintiff had any difficulty initiating movement, difficulty moving generally, or muscle tremors during Plaintiff's insured period. (Id.) Instead, the ALJ noted that the record contained evidence that Plaintiff was generally well during the insured period. (Id.) The ALJ noted that, during the insured period, Plaintiff only had a complaint of back pain related to a nicotine patch, and had some complaints of symptoms from recurring sinus infections that improved with treatments. (Id.) By finding Plaintiff's specific subjective symptoms as inconsistent with objective medical evidence, the ALJ appropriately determined that Plaintiff's subjective symptoms were not likely to cause the claimed limitations.

The ALJ's finding that Plaintiff's subjective pain symptoms were inconsistent with objective medical evidence was supported by the record as a whole. The record indicates that doctors consistently described Plaintiff as pain free with no related systemic or musculoskeletal symptoms that made it difficult for Plaintiff to move or function. (Id. at 530-31, 533-35, 539-40, 543, 546-47, 550-51, 553, 556-57, 560-61, 563-64, 574-77, 580,

589-90, 595-96, 601-02, 605, 608-12, 615-16, 618, 622-25, 629-31, 634-35, 638-40, 643-44, 704-05, 710-14, 719-21, 974, 977-79, 983-84, 987, 990-91, 994-95, 997, 1000-02, 1004-05, 1007-09, 1018-21, 1024, 1033-34, 1039-40, 1045-46, 1049, 1052-56, 1059-60, 1062-63, 1066-69, 1073-75, 1078-79, 1082, 1087-88, 1115, 1150.) When Plaintiff did report pain during that time period, the pain was related to Plaintiff's recurrent sinus problems and sore throats, and the pain did not accompany any systemic or musculoskeletal symptoms that made it difficult for Plaintiff to move or function. (Id. at 334-35, 338-39, 342-43, 521-22, 525-27, 568-71, 583-84, 693-96, 965-66, 969-71, 1012-16, 1027-28, 1137.)

The ALJ then further addressed Plaintiff's subjective pain symptoms, stating that they were inconsistent with the other evidence, specifically treatment history. The ALJ noted that the record did not contain evidence that Plaintiff sought treatment for pain during her insured period. (Id. at 40.) Instead, the ALJ noted that Plaintiff sought treatment for sinusitis, controlled hypertension, metrorrhagia, and other acute treatment. (Id.) The ALJ also noted that the record only indicates Plaintiff seeking treatment for pain beginning in March 2013, which was after Plaintiff's insured status expired. (Id.) By finding Plaintiff's specific subjective symptoms as inconsistent with the evidence of treatment history, the ALJ

appropriately determined that Plaintiff's subjective symptoms were not likely to cause the claimed limitations.

The ALJ's finding that Plaintiff's subjective pain symptoms were inconsistent with treatment history is supported by the record as a whole. The record indicates that, after Plaintiff's AOD in 2007, Plaintiff sought treatment three times, with the reasons for treatment being medication refills and a mammogram referral. (Id. at 633-44, 1077-88.) The record indicates that in 2008, Plaintiff sought treatment once, with the reason for treatment being medication updates. (Id. at 629-32, 1073-76.) The record indicates that in 2009, Plaintiff sought treatment eight times, with the reasons for treatment being for irregular menstruation, a routine cervical exam, and sinus problems. (Id. at 334-36, 338-40, 342-44, 610-26, 1054-70, 1148.) The record indicates that in 2010, Plaintiff sought treatment twelve times, with the reasons for treatment being sinus problems, a routine cervical exam, a routine pelvic exam, tobacco cessation, a sinus operation, and medication refills. (Id. at 563-65, 568-85, 588-91, 594-98, 601-09, 707-16, 717-23, 1007-09, 1012-29, 1032-35, 1038-42, 1045-53.) The record indicates that in 2011, Plaintiff sought treatment four times, with the reasons for treatment being for sinus problems, a routine skin screening, a routine gynecological exam, and medical refills. (Id. at 545-54, 701-05, 989-98.) The record indicates that in 2012, Plaintiff sought

treatment six times, with the reasons for treatment being cellulitis in the foot, a routine gynecological exam, sinus problems, tobacco cessation, and headaches. (Id. at 520-44, 691-98, 964-88, 1115-16, 1118, 1125, 1137-38, 1150.) Not once does the record indicate that Plaintiff sought treatment for severe pain throughout her body that affected her ability to function during her insured period. Instead, the record indicates that Plaintiff did not first report severe pain and pain-related limitations until March 2013, more than two months after Plaintiff's DLI. (Id. at 29, 504, 948, 1114, 1128.)

Through following the appropriate Social Security regulations in evaluating Plaintiff's subjective symptoms, the ALJ's decision allows meaningful review. Meaningful review can be frustrated when an ALJ's decision fails to adequately explain the reasons for denying a claimant benefits. See Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016); Mascio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015); Radford, 734 F.3d at 296. While meaningful review can be frustrated at various parts of an ALJ's decision, an ALJ's subjective symptom evaluation can frustrate meaningful review by failing to evaluate individual evidence and instead providing a cursory analysis and conclusion. See Lewis, 858 F.3d at 866-68. The ALJ in this case did not provide a mere cursory analysis, and the ALJ made no broad statement that

Plaintiff was generally not credible. Instead, the ALJ limited his discussion to an analysis of Plaintiff's specific subjective symptoms of pain. (R. at 39-40.) As previously explained, the ALJ properly evaluated Plaintiff's subjective pain symptoms in accordance with the Social Security regulations by comparing them with objective medical evidence and other evidence. (Id.) The ALJ then provided a clear explanation that Plaintiff's subjective pain symptoms were inconsistent with the available evidence, and ultimately concluded that such inconsistency meant Plaintiff's subjective pain symptoms were unsupported. (Id.) Therefore, the Court does not find that meaningful review has been frustrated by the way the ALJ evaluated Plaintiff's subjective symptoms.

## IV.  RECOMMENDATION

For the reasons set forth, the undersigned U.S. Magistrate Judge finds that the ALJ's decision is supported by substantial evidence and does not contain legal error. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. 18) be DENIED and Defendant's Motion for Summary Judgment (Dkt. 20) be GRANTED.

## VII. <u>NOTICE</u>

The parties are advised that objections to this Report and
Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of
the Federal Rules of Civil Procedure, must be filed within
fourteen (14) days of its service.  Failure to object to this
Report and Recommendation waives appellate review of any
judgment based on it.

The Clerk is directed to send a copy of this Report and
Recommendation to all counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

January 18, 2018
Alexandria, Virginia